## A11A1345. JACKSON v. THE STATE.
### (715 SE2d 812)

ANDREWS, Judge.

Sylvester Jackson appeals after a jury found him guilty of possession of tools for the commission of a crime. OCGA § 16-7-20. Jackson contends that the evidence was insufficient because currency is not a "device" that is commonly used in the commission of theft by deception. We disagree and affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the defendant no longer enjoys the presumption of innocence; moreover, an appel-

---

late court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence at trial was that Jakeitha Nipper was going into a bank on the day in question when a woman came up to her and told her that she had been "blessed" with a large sum of money and wanted to share it. Nipper said that a man was standing nearby and appeared to be listening. The woman, later identified as Jackson's co-defendant Juanita Lewis, included the man, later identified as co-defendant Jimmy Moses, in the invitation to share the money and told Nipper that she wanted to sit in Nipper's car and divide the money. The woman showed Nipper what was in the black bag she was carrying. The bag contained a bundle of two hundred $1 bills with a $100 bill on either end. It also contained a card with "$10,000" written on it. Nipper refused to get in her car and said she did not want any of the money. The man and woman walked off in different directions, but Nipper continued to watch them and saw them meet later at a car in the parking lot.

Nipper called 911 and described the car. She said that police stopped the car at a Chevron station and called her to identify the car and the occupants. Nipper identified the woman but could not identify the men in the car.

Officer Clay Ivey testified that he was familiar with this type of scam, known as the "pigeon drop" scam. He explained that this scam targeted women or the elderly in parking lots and usually involved two or three people. One person would approach the intended victim and tell them that she found a bag or bandanna containing a lot of money. There would usually be a note indicating that the money had been obtained in some illegal fashion, thereby making it easier to convince the potential victim to agree to split the money.

The other person involved in the scam would pretend to overhear and would tell them that he knows a lawyer who will take the money and "launder the money out," but they each need to put in an additional 10 percent to 25 percent of their own money. They then go with the victim to the bank, each one draws out money, and they put all the money in the bag.

One of the scammers then says that he is going to see the lawyer, leaving the bag with the money in the victim's car. The other scammer also leaves at some point, ostensibly to go look for the other person. However, before they leave, one of the two scammers secretly takes the bag with the money and substitutes another bag full of cut up newspaper.

Juanita Lewis and Jimmy Moses[1] both testified at trial. They stated that Jackson drove them to the spot where they planned to use the bundle of bills and the card to find somebody they "could swindle." They said that the plan did not work that time because Nipper refused to participate.

Jackson testified and acknowledged that he picked up Lewis and Moses on the day in question and drove them from place to place for purposes of doing a "flim flam." Jackson testified in detail about the manner in which the scheme was supposed to work. Jackson denied, however, actually participating in the scam.

The jury found Jackson guilty of possession of tools for the commission of a crime and not guilty of forgery. Because the jury was unable to reach a unanimous verdict on the charge of criminal attempt to commit theft by deception, the court declared a mistrial as to that count. This appeal followed.

On appeal, Jackson acknowledges that the evidence, including his own testimony, was sufficient to show that he knowingly participated in the scheme to get money from the prospective victim. He argues, however, that United States currency cannot be considered a "device" for purposes of OCGA § 16-7-20, and also contends that the currency and the note are not tools "commonly used" in the commission of a theft.

OCGA § 16-7-20 (a) provides: "A person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime." The indictment alleged that Jackson had in his

> possession certain devices, to wit: a bundle of one dollar bills with one hundred dollar Federal Reserve Notes on the outside of the bundle and a document in the bag indicating that $10,000.00 was in the bag with the bundle, devices commonly used in the commission of the crime of theft by deception, particularly a scheme known as a "pigeon drop," and did intend to make use of these devices in the commission of a crime. . . .

The trial court held that the indictment did not merely charge Jackson with possession of currency, but rather possession of currency bundled in a specific manner to make it appear that the bundle

---

[1] Lewis and Moses pled guilty to criminal attempt to commit theft by deception, possession of tools for the commission of a crime, and second degree forgery.

contained more money than was actually there, along with a document stating that there was $10,000 in the bundle. Thus, in the manner fashioned, it became more than mere currency — it was basically "pigeon bait."

There was no error. The investigating officer testified that he himself had investigated 15 to 20 of these "pigeon drop" scams and it always involved a bundle of what appears to be a large sum of money and a note. Both of Jackson's co-defendants also testified that this was how the scam worked using the bundle of money. In addition, Jackson himself testified as to how this particular "flim-flam" was carried out, stating that it had not been known as a "pigeon drop" since the 50s and was now called a "drag." He stated that it always involved a "bundle of money."

Accordingly, we conclude that there was sufficient evidence from which the jury could conclude that the currency and note were "devices commonly used" in the commission of the crime of theft by deception. Therefore, there was sufficient evidence for the jury to find that Jackson was guilty of the crime charged beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED AUGUST 16, 2011.

*Crawford & Boyle, Eric C. Crawford*, for appellant.
*Richard R. Read, District Attorney, Paul J. Stalcup, Roberta A. Earnhardt, Assistant District Attorneys*, for appellee.